


**U.S. Department of Homeland Security**
Washington, DC 20229

U.S. Customs and Border Protection

June 13, 2022

**PUBLIC DOCUMENT**

OT:RR:BSTC:PEN H324177 BEK
          x-ref: H315648 BEK

David J. Craven, Esq.
Craven Trade Law LLC
Counsel for Global Aluminum Distributor, LLC
3744 N Ashland Avenue
Chicago, Illinois 60613

Lizbeth Levinson, Esq.
Brittney Powell, Esq.
Fox Rothschild LLP
Counsel for Hialeah Aluminum Supply, Inc.
1030 15th Street, NW Suite 380 East
Washington, D.C. 20005

Jeremy Dutra, Esq.
Squire Patton Boggs (US) LLP
Counsel for Ta Chen International, Inc.
2550 M Street, NW
Washington, D.C. 20037

Re:     Remand Redetermination for Enforce and Protect Act ("EAPA") Consolidated Case Number 7348; *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 FR 30650 (May 26, 2011) and *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 FR 30653 (May 26, 2011); Global Aluminum Distributor, LLC and Hialeah Aluminum Supply, Inc.; 19 U.S.C. § 1517

Dear Mr. Craven, Ms. Levinson, Ms. Powell, and Mr. Dutra:

This is a remand redetermination made pursuant to the Court of International Trade's ("CIT") remand order, dated April 15, 2022, in *Global Aluminum Distributor LLC, et al. v. United States, et al.*[1]

---

[1] *See* Order, *Global Aluminum Distributor LLC v. United States*, Consol. Court No. 21-198, (Ct. Int'l Trade April 15, 2022), ECF No. 91 ("Order").

The U.S. Customs and Border Protection ("CBP"), Office of Trade ("OT"), Regulations and Rulings ("R&R"), has received and reviewed the parties' briefs filed at the CIT[2] and has considered arguments made by Global Aluminum Distributor LLC ("Global Aluminum") and Hialeah Aluminum Supply, Inc. ("Hialeah") (collectively, "Importers"), as well as Kingtom Aluminio S.R.L. ("Kingtom"). Kingtom, the manufacturer of the merchandise imported by the Importers and subject to R&R's Final Administrative Determination under case number H315648, dated March 18, 2021 ("R&R March 18 FAD"), was not a party to the investigation, and, thus, could not participate in R&R's original administrative review, pursuant to 19 U.S.C. § 1517(f)(1) ; *see also* 19 C.F.R. § 165.41(a). Kingtom is, however, a Plaintiff-Intervenor in the CIT action.

In light of the arguments raised by the parties during judicial review, and in particular arguments raised by Kingtom for the first time in the CIT action, R&R has reconsidered its original finding of substantial evidence of evasion and affirmance of the Trade Remedy Law Enforcement Directorate's ("TRLED") determination of evasion, dated November 2, 2020 in EAPA Consolidated Case Number 7348 ("TRLED November 2 Determination"). The parties were afforded an opportunity to provide written comments on a draft remand redetermination. The Importers and Kingtom submitted Joint Comments on the Draft Remand, agreeing with the remand redetermination and requesting that R&R make no changes. Ta Chen International ("Ta Chen") did not submit any comments. R&R reviewed and considered the joint comments of the Importers and Kingtom prior to finalizing this remand redetermination. No substantive changes have been made to the remand redetermination.

This remand redetermination focuses solely upon the central issue of whether there is substantial record evidence of evasion and does not consider other procedural arguments made by the parties in their briefs.

The Background and Law sections in the R&R March 18 Final Administrative Determination (FAD) are incorporated by reference as if fully set forth herein.

Further review and analysis of the administrative record as transmitted by TRLED to R&R prior to the issuance of the R&R March 18 FAD, in conjunction with arguments made by the parties on judicial review, has led R&R to reach a different conclusion upon remand, from the conclusion reached in the March 18 FAD. The reasoning behind this reconsideration is provided below.

Preliminarily, the administrative record does not support the application of adverse inferences and use of facts otherwise available, as done in the TRLED November 2 Determination, to infer that Kingtom could not produce all of the aluminum extrusions it exported and, consequently, that all of Kingtom's aluminum extrusion exportations to the United States contained Chinese-origin aluminum extrusions commingled with aluminum extrusions it produced in the Dominican Republic. The TRLED November 2

---

[2] *See* Memorandum of Law in Support of the Rule 56.2 Motion of Plaintiff Global Aluminum Distributor LLC and Consolidated Plaintiff Hialeah Aluminum Supply, Inc for Judgment upon the Agency Record. *See also* Brief of Plaintiff-Intervenor Kingtom Aluminio S.R.L. in Support of Motion for Judgment on the Agency Record.

Determination relied heavily on the use of adverse inferences based upon purported discrepancies and deficiencies in the record. Specifically, CBP found that such perceived discrepancies hindered CBP's ability to properly analyze Kingtom's operations and demonstrated Kingtom's failure to cooperate and comply to the best of its ability in responding to requests for information. These perceived discrepancies, however, had other explanations as provided by the Importers and Kingtom.

First, the TRLED November 2 Determination appears to conflate the monthly theoretical production volume and monthly sales volume figures provided by Kingtom and treat them as interchangeable when they are wholly different figures. As Kingtom produces aluminum extrusions customized to the specifications of each of their customers,[3] it stands to reason that production numbers would fluctuate between months as the number of orders produced in a given month would depend on the number of orders received. At the same time, monthly production numbers would not mirror monthly sales numbers as production of an order could straddle two different months or otherwise be completed in one month but not shipped until the next. Even if Kingtom had continuous, consistent production (*i.e.*, did not produce customized aluminum extrusions to order) throughout each month, the monthly sales volume would still fluctuate depending upon the number of orders received and filled in each month. Generally speaking, it stands to reason that production and sales numbers cannot be viewed within rigid timeframes and expected to mirror one another due to fluctuations and the realities of manufacturing.

Furthermore, comparison of the daily production records provided by Kingtom in response to the initial Request for Information ("RFI") with the theoretical production volume provided by Kingtom in response to the Supplemental RFI shows that the numbers are the same when converting the aluminum extrusions from kilograms to pounds, with the exception of one month.[4] It does not appear that TRLED ever compared these two sets of numbers as Kingtom's daily production records were disregarded as unreliable due to the format in which it was provided.[5] Nothing in the record, however, discredits those records as unreliable or contradicts Kingtom's assertions that such records were kept in the normal course of business.

Second, many of the other inconsistencies noted by the TRLED November 2 Determination as support for the application of adverse inferences have logical explanations as provided by the Importers in their Requests for Administrative Review (and theirs and Kingtom's subsequent briefs submitted upon their request for judicial review). For example, a majority of the differences in payment amounts by the Importers and the actual amount deposited into Kingtom's bank account are consistent small figures. Kingtom's bank statements and summary of transactions show that their bank charged transaction fees. While TRLED asked a number of follow-up questions in the Supplemental RFI to Kingtom,

---

[3] *See* Kingtom's RFI Response, page 9.
[4] Hialeah contends that this one month was an inadvertent error by Kingtom. *See* Hialeah's Request for Administrative Review, page 11, note 45.
[5] *See* TRLED November 2 Determination, page 13, note 89.

an explanation for such discrepancies was never requested.[6] These discrepancies were not brought to the attention of the Importers and Kingtom until the issuance of the TRLED November 2 Determination. The information used by the Importers to explain the discrepancies is found within the record and no new facts have been introduced by the Importers during the final administrative review process. At the same time, minor discrepancies in financial records or invoices is not indicative of a lack of aluminum extrusion production capacity.

The record shows that throughout the investigation, Kingtom as well the Importers, responded to all of CBP's requests for information. To the extent CBP found that there were discrepancies as delineated in the TRLED November 2 Determination, CBP did not issue supplemental questionnaires to Kingtom. The amount of documentation and responses provided by Kingtom and the Importers in conjunction with the misinterpretations of that documentation and information as found within the TRLED November 2 Determination does not support the application of adverse inferences. There is no indication within the record that Kingtom refused to provide requested information or otherwise did not fully cooperate to the best of its ability during the course of the EAPA investigation. As such, the application of adverse inferences by TRLED was improper.

We now turn to the evidence found within the administrative record and conclude that the record lacks affirmative evidence of evasion and therefore, the record cannot justify a finding of substantial evidence of evasion. Specifically, while the record indicates that Kingtom has ties to China—*e.g.*, its ownership, nationality of some of its employees, and its sourcing of some equipment and supplies—the record does not support a finding that the aluminum extrusions were not produced at Kingtom's manufacturing facility in the Dominican Republic. Furthermore, nothing in the record indicates that any aluminum ingots or scrap were supplied by Chinese companies.[7] As indicated in the record, there is no dispute that Kingtom has the ability to produce aluminum extrusions.[8] Thus, after further review, we find that in EAPA Consolidated Case Number 7348, the administrative record does not contain actual proof of evasion to meet the substantial evidence standard.

As discussed earlier, Kingtom documented its daily production per each aluminum extrusion press as part of its normal course of business and provided such documentation to CBP in response to the initial RFI.[9] The record does not discredit these daily production records as unreliable or contradict Kingtom's assertions that such records were kept in the normal course of business. Moreover, the record evidence includes copies of purchase orders, employee records, contracts, bank records, invoices, financial statements, production

---

[6] The record evidence further supports that other discrepancies or deficiencies noted in the TRLED November 2 Determination as support for applying adverse inferences also resulted from a lack of specificity in the follow up questions in the Supplemental RFI to Kingtom and not Kingtom's failure to respond, such as a breakdown of the actual hours worked by employees.

[7] To the extent that the TRLED November 2 Determination finds that Kingtom failed to adequately explain what certain suppliers provided, as noted in Table 1 of the TRLED November 2 Determination, we note that the Supplemental RFI to Kingtom did not request more specific information about those supplies, despite asking for other additional information about those same suppliers as a follow-up question. *See* Kingtom's Supplemental RFI Response, pages 21-23.

[8] *See* TRLED November 2 Determination, page 17.

[9] *See* Kingtom's RFI Response Exhibit 21.

records, raw material purchase documentation, videos, and photographs, all indicating that Kingtom had the capacity to, and did, produce aluminum extrusions in its Dominican Republic factory and in the quantities that were exported to the United States on a custom order basis.  This documentation also has not been shown to be unreliable.  All of this documentation needed analysis and consideration by TRLED before reaching its conclusions regarding Kingtom's production capacity.  The administrative record, including the TRLED November 2 Determination, did not provide such an analysis and, rather, placed much significance and weight upon alleger Ta Chen's site visit affidavit to find a lack of production capacity at Kingtom.[10]

The record shows that, when the number of aluminum extrusion presses were cited in statements regarding site visits, there was never fewer than three (3) aluminum extrusion presses observed at Kingtom.  Kingtom provided the monthly production capacity for three (3) aluminum extrusion presses in its initial RFI Response, demonstrating the ability to manufacture the full amount of goods it exported to the United States[11] and also produced additional records to indicate the addition of more extrusion presses over the course of time when the site visits occurred and later on during the period of investigation.[12]  These additional extrusion presses also had varying total production capacities and a greater capacity to produce larger aluminum extrusions that Kingtom exported to the United States.[13]  Without underlying affirmative evidence on the administrative record that discredits the authenticity and/or accuracy of the documentation provided by the Importers and Kingtom, we cannot rely upon assertions made by the alleger that a competitor lacked production capacity.  An audit of the production records in comparison to the purchase/entry records is required to make such a finding.  The administrative record does not contain such an audit.

Furthermore, although at the time of the separate visits by Ta Chen's expert and U.S. Government officials, they observed minimal production at Kingtom, Kingtom's production records corroborate that not all of the aluminum extrusion presses were operating at full capacity on the days when those separate site visits took place.[14]  Importantly, however, this does not mean that the aluminum extrusion presses did not operate at higher capacities on other days or at other times on the days of those visits; indeed, the production records show greater operation at other times.[15]  As discussed above, the record demonstrates that Kingtom produced custom aluminum extrusions to order and did not keep a steady stream of production for inventory purposes.  These fluctuations in production are expected when the goods are produced to order, as Kingtom's submissions suggest.  Additionally, while the Importers and Kingtom provided several photographs and/or videos documenting

---

[10] *See* TRLED November 2 Determination, page 9.
[11] *See* Kingtom's RFI Response, page 2.
[12] Further, in reviewing the Equipment List, it becomes apparent that the timeline for when the fourth and subsequent aluminum extrusion presses became operational was not cited correctly in the TRLED November 2 Determination.  Specifically, the fourth aluminum extrusion press became operational several months prior to when the TRLED November 2 Determination states it did.  *See* Kingtom's RFI Response Exhibit 19.  *Contra.* TRLED November 2 Determination, page 9.
[13] *See* Kingtom's RFI Response Exhibit 19.
[14] *See* Kingtom's RFI Response Exhibit 21.
[15] *See Id.*

production,[16] neither Ta Chen's site visit affidavit nor CBP's Attaché Report are accompanied by any visual evidence to support their written observations. Those separate site visits by Ta Chen and CBP only lasted a single day each. TRLED relied on the extent of production observed during a single site visit to extrapolate Kingtom's monthly production capacity, while not affording any weight to more complete production information submitted by Kingtom. Such isolated observation cannot comprise the entirety of evidence used to find a lack of production that would signify evasion. The administrative record needs to contain greater evidence than an affidavit opining on overall production capacity after only one visit to the manufacturer.

We additionally note that the affidavit of Ta Chen's expert is dated August 21, 2019, the day before the date of Ta Chen's supplemental allegation. The administrative record does not include any earlier documentation regarding the site visit. Thus, R&R cannot deduce whether an earlier affidavit of Ta Chen's expert, written closer to the time of the visit, exists. We also note that Kingtom indicated that it reached out to Ta Chen, *a direct competitor*, in early 2019—prior to Ta Chen's site visit to Kingtom upon which the allegation is based—to discuss raw material suppliers.[17] Ta Chen's site visit affidavit does not indicate that Kingtom refused entry or otherwise tried to hide its operations from Ta Chen; rather, it appears that Kingtom contacted Ta Chen in order to build business contacts. Then, several months after this visit, Ta Chen filed an EAPA allegation against the Importers asserting transshipment. Overall, based on the administrative record and arguments made by the Importers and Kingtom in their briefs, we find Ta Chen's site visit affidavit makes many leaps to attempt to strengthen Kingtom's ties to China that are not supported by the record evidence. For example, Ta Chen's site visit affidavit noted different packaging and labeling on finished aluminum extrusions during this site visit and claimed this is consistent with transshipment practices, but another explanation exists: that Kingtom produces customized aluminum extrusions to order and packages/labels them in accordance with each customer's individual requirements.[18] Ta Chen's site visit affidavit does not indicate that the different packaging Ta Chen's expert observed ties the aluminum extrusion production to China or that Kingtom did not otherwise produce them. The Importers and Kingtom have provided explanations for the perceived discrepancies and submitted thousands of pages regarding the running of Kingtom and its manufacturing capabilities. As a result, we find the reliability of the observations found within the affidavit and allegations to be questionable.

Altogether, we find the documentation evidencing production capability and capacity provided by Kingtom credible, and that the administrative record does not contain a strong enough connection between covered merchandise from China and Kingtom to support a finding of substantial evidence of evasion. Upon reconsideration, we have determined that the Importers and Kingtom have provided explanations for the perceived discrepancies that were previously relied upon to find evasion occurred.

---

[16] *See, e.g.,* Kingtom's RFI Response Exhibits 3 and 30. *See also, e.g.,* Global Aluminum's Voluntary Submission, Exhibit N.
[17] *See* Brief of Plaintiff-Intervenor Kingtom Aluminio S.R.L. in Support of Motion for Judgment on the Agency Record, page 5.
[18] *See* Kingtom's RFI Response, page 4.

Based upon the documentation and information provided in the administrative record, we find that there is not substantial evidence to support a finding of evasion as to the Importers.

Based upon our remand *de novo* review of the administrative record in this case, the R&R March 18 FAD and TRLED November 2 Determination of evasion under 19 U.S.C. § 1517(c) are REVERSED.

Sincerely,

**Paul Pizzeck** Digitally signed by Paul Pizzeck
Date: 2022.06.13 16:26:53 -04'00'

Paul Pizzeck
Chief, Penalties Branch, Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection


Approved by:

**JOANNE R STUMP** Digitally signed by JOANNE R STUMP
Date: 2022.06.13 17:44:02 -04'00'
_____

Joanne R. Stump
Deputy Executive Director, Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection